NO. 07-05-0382-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 5, 2006


______________________________



IN THE INTEREST OF C.G.B., T.L.B. AND M.B., 


 

 Minor Children

_________________________________



FROM THE 100TH DISTRICT COURT OF CHILDRESS COUNTY;



NO. 8855; HON. DAVID MCCOY, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

 Christine Hoover (Hoover) appeals from an order terminating the parental
relationship between her and her children, C.G.B., T.L.B. and M.B. Her two issues attack
the trial court's finding that termination was in the best interests of the child; she does not
question whether the evidence satisfied one of the statutory grounds alleged as warranting
termination. We affirm that judgment. 

Standard of Review 


 The applicable standard of review is explained in In re C.H., 89 S.W. 3d 17 (Tex.
2002). We refer the parties to that opinion for a discussion of the standard. 

 Next, indicia such as those that have become known as the Holley factors are
helpful in testing a determination that termination of the parent/child relationship is in a
child's best interest. See Holley v. Adams, 544 S.W.2d 367 (Tex. 1976) (discussing the
indicia). They encompass 1) the desires of the child, 2) the emotional and physical needs
of the child now and in the future, 3) the emotional and physical danger to the child now
and in the future, 4) the parental abilities of those seeking custody, 5) the programs
available to assist those seeking custody to become effective parents, 6) the plans for the
child by these individuals or by the agency seeking custody, 7) the stability of the home or
proposed placement, 8) the acts or omissions of the parent which may indicate that the
existing parent/child relationship is not a proper one, and 9) any excuse for the acts or
omissions of the parent. Id. at 372. And, while helpful, those factors are not the sole ones
subject to consideration. In re C.H., 89 S.W.3d at 27. Other matter is also worthy of note,
such as the evidence used to prove one or more statutory grounds for termination. Id. at
28. Nor can it be forgotten that one need not prove that each Holley factor supports
termination. Id. Rather, there need be only enough evidence upon which the factfinder
can reasonably form a firm conviction or belief that the child's best interest warranted
termination. 

 Here, the evidence before us showed that 1) Hoover had been referred to Child
Protective Services (CPS) for "medical neglect and physical abuse" on C.G.B. in
September 1998, 2) C.G.B. was a few months old and needed to be on an apnea monitor
which Hoover failed to do, 3) in 2002, C.G.B. and T.L.B. were removed from the home due
to a criminal investigation into the death (by suffocation) of another of Hoover's children,
4) Hoover is the subject in an ongoing criminal investigation into the child's death and
according to one witness is the person who "murdered" the child, 5) C.G.B. was three or
four years old at the time of the sibling's death while T.L.B. was two, 6) the various houses
wherein the children had lived were deplorable and smeared with human feces, 7) Hoover
stated that this had been an ongoing problem and the reason the feces were on the walls
was because she had a hard time getting it off, 8) Hoover had to move several times due
to eviction notices and the deplorable conditions of the home, including human feces on
the wall, no linens on the children's beds and trash running over in all the rooms, 9) Hoover
was unable to maintain employment, 10) there were attachment issues between Hoover
and the children (i.e. they had not bonded), 11) Hoover had continuing problems with
depression, 12) the children suffered from ringworms, 13) Hoover was diagnosed with self-defeating and depressive personality traits, 14) Hoover's mental traits impaired her
parenting ability and her prognosis for improvement was poor, 15) she, furthermore, had
a dependent personality which prevented her from being able to parent children, 16) out
of the 11 opportunities to visit with M.B., her infant child, Hoover was late for five
appointments and was a "no-show" for six, 17) Hoover, according to her therapist, is a
pathological liar, 18) she continued to stay in an abusive relationship with Lloyd Hoover
(her husband and father of the deceased child) off and on which included the period
wherein she became pregnant with M.B., 19) she depended upon the financial support of
family, 20) Hoover either failed to comply with the CPS service plan developed to get her
children back or marginally completed the assigned tasks, and 21) she could not financially
support her children or provide them a safe and stable environment. 

 Other evidence illustrated that C.G.B. and T.L.B. 1) were diagnosed with behavioral
problems when first placed with their foster parents, 2) these behaviors included
nightmares, eating disorders, fighting, aggression and smearing feces on walls, 3) M.B.
had never lived with Hoover because of the ongoing criminal investigation into the death
of Hoover's third child, 3) C.G.B. and T.L.B. were in need of constant supervision, 4) both
would "run off in parking lots," . . . "were cruel to animals in the home," "avoided being
parented," and "usually responded quite angrily at having consequences," and 5) since
being removed from Hoover, the children were exhibiting about half of the problems they
originally presented.

 In comparing the foregoing litany of evidence against the Holley factors, one could
reasonably form a firm conviction or belief that Hoover lacked the parental ability, skills and
desire as well as the financial ability to raise offspring, that though programs were available
to assist her in improving her personal and parenting skills she did not or could not benefit
from them, that Hoover could not provide a stable home environment for all three children,
and that Hoover's acts or omissions indicated that the existing parent/child relationship was
not a proper one. In short, the evidence entitled a factfinder to reasonably form a firm
conviction or belief that it was in the best interest of each child to terminate the parent/child
relationship.

 Having found that the evidence both legally and factually supports the decision that
termination would be in the children's best interests, we affirm the judgment of the trial
court. 


 Brian Quinn 

 Chief Justice 



160;                                                          Per Curiam
Do not publish.